Chernoff, J.
Plaintiff, United Press International, Inc. (UPI), has brought suit against defendant, New England Television Corporation (NETCO), on a contract for satellite news services which was to be performed during the five-year renewal term of their original contract. UPI claims that the contract was automatically renewed according to its terms because NETCO failed to give notice of termination at least six months prior to the end of the initial five-year contract. NETCO seeks dismissal on the grounds that the automatic renewal provision is unenforceable because, pursuant to New York law, UPI failed to provide NETCO with written reminder notice of the upcoming renewal. If Massachusetts law applies, then there would have been no requirement for reminder notification and the contract would be enforceable. If New York law applies, NETCO is entitled to a dismissal.[1] For the reasons stated below, the Court finds New York law controlling and thus ALLOWS the Motion to Dismiss the contract action.
UNDISPUTED FACTS
The plaintiff, UPI, is a New York corporation with a usual place of business in New York City. UPI provides news services to subscribers throughout the United States. These services are delivered by satellite transmission to UPI-owned and -maintained printers located on the subscriber’s premises. NETCO is a Massachusetts corporation with its principal place of business in Boston. NETCO is a regional television enterprise which obtains some of its programming through subscription services. On or about May 21, 1984, UPI and NETCO entered into an agreement at the UPI office in New York City whereby UPI agreed to provide news services via satellite transmission and on-site printer installation to NETCO in Massachusetts. The Agreement was drafted by UPI and provided for weekly advance payments to be made to UPI in New York.
The initial term of the agreement was for five years, commencing on April 1, 1984, with continuous five-year renewal terms and no expiration date. The agreement provided for automatic renewal absent notice of termination at least six months prior to the end of the current term.[2] Since the original contract was to terminate on April 1, 1989, NETCO was required to give termination notice on or before October 1, 1988. NETCO did not give notice of its intent to terminate until January 9, 1989. In addition, UPI did not give notice calling NETCO’s attention to the automatic renewal provision pursuant to New York law to NETCO fifteen to thirty days before the October 1,1988 termination deadline.[3] UPI removed its equipment from NETCO’s premises shortly after the end of the then current term.
UPI’s position is that the contract was automatically renewed in the absence of timely termination notice, thereby entitling UPI to recover the contract payments over the five-year renewal period, a sum amounting to approximately $350,000. NETCO’s position is that the renewal term is unenforceable in the absence of timely notice by UPI of the provision and the impending deadline.
RULINGS
The enforceability of the instant contract lies in the choice of state law as New York does, and Massachusetts does not, impose an obligation on a service provider to notify a service recipient of an upcoming deadline or provision to terminate a contract with a self-extending provision. “Where the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties’ choice as long as the result is not contrary to public policy . . .” Steranko v. Inforex, Inc., 5 Mass.App.Ct. 253, 260 (1977). In the instant case, the parties have not expressed such a specific intent and the applicable law must be determined from an analysis of the choice-of-law criteria articulated by the Supreme Judicial Court in Bushkin Associates Inc. v. Raytheon Co., 393 Mass. 622 (1985). Massachusetts has abandoned the lex loci rule which considered only where the contract was made in favor of a more functional choice-of-law approach that “responds to the interests of the parties, the States involved, and the interstate system as a whole.” Buskin, supra at 631. In doing so, Massachusetts has adopted the “most significant relationship analysis” in accord with the general principles of the Restatement (Second) of Conflicts of Laws (1971). See Bushkin, supra at 631-36. The analysis requires more than merely adding up the various contacts; it necessitates a careful balancing of the competing interests, which unavoidably results in some vagueness. Bushkin, supra at 632. While this method is more discre *284 tionary and thus less predictable, its rejection of artificial conditions avoids the awkward and arbitrary results of the traditional approach. Bushkin, supra at 632. The Bushkin court cited the contacts and factors which must be taken into account under the Restatement. The relevant contacts which must be considered include:
(a) the place of contracting
(b) the place of negotiation of the contract
(c) the place of performance
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Bushkin, supra at 632.
The relevant factors include:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular held of law,
(1) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied. Bushkin, supra at 632.
In this case, as in Bushkin, an analysis of the contacts does not reveal which state has the more significant relationship.[4] Therefore, the decision should turn on a consideration of the influencing factors. In Bushkin, the Supreme Judicial Court found Massachusetts law rather than New York law should determine the validity of an oral agreement where a New York broker sought an acquisition finder’s fee from a Massachusetts corporate defendant. The New York Statute of Frauds law would have barred recovery. The Bushldn court found that all but one of the influencing factors pointed clearly toward neither state, but that the justified expectations of the parties factor militated for Massachusetts law since the parties would have expected to be bound by the alleged agreement. Here, all of the influencing factors, save possibly one, favor New York law. The needs of the interstate and international system are for certainty, uniformity and predictability. UPI’s form contract, signed and negotiated in New York with payments made to UPI in New York should be consistent as to termination procedures for those receiving services throughout the country and around the world, especially where New York law imposes a procedural consumer type of protection for those using the services of the New York service provider. The policy underlying the law is that a service recipient should not face the specter of enormous damages and the imposition of a multi-year renewal contract because simple inadvertence may have led to a delay in sending a termination letter. The justified expectation of the parties factor may favor Massachusetts if one assumes that parties to a contract always expect to be held to the precise terms of the contract. This Court, however, has no way of knowing whether UPI, which negotiates and executes similar contracts in New York on a regular basis, had expectations that New York law would or would not govern. In any event, the form contract was drawn by UPI and UPI could well have made provision in the contract for the application of the law of a particular state.
Accordingly, the court finds that New York has the most significant relationship with the contract. As the contract is not enforceable under New York law, this Court dismisses the contract action. There may be a factual dispute as to when UPI repossessed its printers from the NETCO premises and whether NETCO received and accepted services for a short period following the expiration of the original five-year term. A motion for summary judgment may well resolve this issue.
ORDER
It is therefore ORDERED that defendant’s motion to dismiss the contract claim be ALLOWED.

Even if dismissal is appropriate on the contract claim, UPI seeks recovery in quantum meruit for services allegedly performed after the expiration of the original contract. The viability of the quantum meruit action will have to await determination at Summary Judgment.

Section 3 of the Agreement provides: “Term: This Agreement shall continue for Five years from April 1, 1984 and shall renew itself continuously for further terms of Five years each unless either party notifies the other by certified letter received by subscriber at [address missing] or by UPI at its New York office at least six months before the end of the then current term of its desire to terminate, in which event this Agreement shall terminate at the end of the then current term.”

N.Y. Gen. Oblig. Law, §5-903 (McKinney 1995) provides in pertinent part that: “No provision of a contract for service ... which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service . .. gives notice to the person furnishing such contract service ... of his intention to terminate the contract at the expiration of such term, shall be enforceable . . . unless the person furnishing the service ... at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service . . . written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.”

New York was the place of contracting and negotiation while Massachusetts is the place of performance and arguably the location of the subject matter (which is beamed from outer space). The location of the parties is a neutral factor.